JAMES F. CLAPP (145814)
jclapp@clapplegal.com
MARITA M. LAUINGER (199242)
mlauinger@clapplegal.com
CLAPP & LAUINGER LLP
701 Palomar Airport Road, Suite 300
Carlsbad, California 92011
Tel: 760-209-6565 ext. 101
Fax: 760-209-6565

EDWARD J. WYNNE (165819)
Ewynne@wynnelawfirm.com
GEORGE R. NEMIROFF (262058)
Gnemiroff@wynnelawfirm.com
WYNNE LAW FIRM
80 E. Sir Francis Drake Blvd., Ste. 3G
Larkspur, CA 94939
Tel: 415-461-6400
Fax: 415-461-3900

Attorneys for Plaintiff
STEVEN BARR

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN BARR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SAG-AFTRA HEALTH PLAN,<br><br>Defendant. | CASE NO.<br><br>**CLASS ACTION COMPLAINT:**<br><br>1. Negligence<br>2. Unjust Enrichment<br>3. Breach of Implied Contract<br>4. Violation of Cal. Confidentiality of Medical Information Act<br>5. Violation of Cal. Consumer Privacy Act<br>6. Violation of Cal. Bus. & Prof. Code section 17200 et seq. |

1

Plaintiff Steven Barr ("Plaintiff"), individually and on behalf of all others similarly situated, by and through the undersigned attorneys, bring this class action against Defendant SAG-AFTRA Health Plan ("Defendant" or "Plan").

## **INTRODUCTION**

1.      The release, disclosure, and publication of sensitive, personal information can be devastating. Not only is it an intrusion of privacy, but it is a harbinger of identity theft.

2.      This class action arises out of a recent email phishing attack against Defendant, which led to unauthorized third parties accessing and stealing highly sensitive personal information of Plaintiff and similarly situated Plan participants (the "Data Breach").

3.      The personal information obtained during the Data Breach includes names, social security numbers, and health insurance information (collectively, "PII").

4.      Defendant is a labor management trust that provides healthcare coverage and benefits to members of the Screen Actors Guild and American Federation of Television and Radio Artists unions.  During the regular course of conducting its business, Defendant collects, stores, and transfers the PII of its participants (collectively the "Class Members").

5.      On or about September 18, 2024, Defendant learned an employee's email account had been compromised through a phishing scam.  After engaging forensic experts, Defendant learned that unauthorized third parties had accessed PII entrusted to Defendant.

6.      Despite knowing of the Data Breach since September 18, 2024, Defendant did not send a Notice of Data Security Incident ("Notice") to individuals affected by the Data Breach until December 2, 2024.  Plaintiff was not notified of the Data breach until he received the Notice on December 9, 2024, approximately 10 weeks after the Data Breach.

2

7.     Because cyberattacks targeting large organizations are ubiquitous, it was foreseeable that Defendant would be the target of a cyberattack, and it should have taken appropriate precautions.

8.     The Data Breach was a direct result of Defendant's failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect PII from the foreseeable threat of a cyberattack.

9.     By being entrusted with Plaintiff's and Class Members' PII for its own pecuniary benefit, Defendant assumed a duty to Plaintiff and Class Members to implement and maintain reasonable and adequate security measures to protect Plaintiff's and Class Members' PII against unauthorized access and disclosure. Defendant also had a duty to adequately safeguard this PII under applicable law, as well as pursuant to industry standards and duties imposed by statutes, including Section 5 of the Federal Trade Commission Act ("FTC Act"). Defendant breached those duties by, among other things, failing to implement and maintain reasonable security procedures and practices.

10.    Cybercriminals can use and sell stolen PII to further harm Plaintiff and Class Members in a variety of ways, including: destroying their credit by opening new financial accounts and taking out loans in Class Members' names; using Class Members' names to improperly obtain medical services; using Class Members' PII to target other phishing and hacking intrusions; using Class Members' PII to obtain government benefits; and otherwise assuming Class Members' identities.

11.    Defendant's failure to notify the victims of its Data Breach in a timely manner meant that Plaintiff and Class Members were unable to take quick action to prevent or mitigate the resulting harm.

12.    Despite having been accessed and "acquired" by unauthorized criminal actors, Plaintiff's and Class Members' sensitive and confidential PII remains in Defendant's possession. Absent additional safeguards and

3

CLASS ACTION COMPLAINT

independent review and oversight, the information remains vulnerable to further cyberattacks and theft.

13.     As a result of the Data Breach, Plaintiff and thousands of Class Members have suffered concrete harm and are now exposed to a heightened and imminent risk of fraud and identity theft for a period of years, if not decades. Furthermore, Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft, at their own expense. Consequently, Plaintiff and the other Class Members will incur ongoing out-of-pocket costs for, *e.g.*, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

14.     Plaintiff and Class Members also will be forced to expend additional time to review credit reports and monitor their financial accounts for fraud or identity theft. Moreover, because the exposed information includes social security numbers, the risk of identity theft and fraud will persist throughout their lives.

## **PARTIES**

15.     Plaintiff Steven Barr is an individual residing in Los Angeles County, California.

16.     Plaintiff entrusted his PII to Defendant in connection with his enrollment and participation in the Plan.

17.     On approximately December 9, 2024, Plaintiff received a Notice from Defendant stating his PII had been accessed by unauthorized third parties in the Data Breach.

18.     Plaintiff is careful about sharing his PII and takes reasonable steps to protect it.  Plaintiff has never knowingly transmitted unencrypted PII over the internet or through other unsecured means.

4

19.    At the time of the Data Breach, Defendant retained Plaintiff's PII in its systems, and on information and belief it continues to retain that information.

20.    Upon receiving notice of the Data Breach, Plaintiff made reasonable efforts to mitigate its impact, including, but not limited to, monitoring his various financial and banking accounts for fraudulent activity.

21.    Once PII is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or contained against future misuse. For this reason, Plaintiff will need to maintain these heightened measures for years.

22.    Plaintiff has also suffered actual injury from having his PII compromised as a result of the Data Breach, including, but not limited to: (a) damage to and diminution in the value of Plaintiff's confidential PII—a form of property that was entrusted to Defendant and was compromised as a result of the Data Breach Defendant failed to prevent, and (b) a violation of Plaintiff's privacy rights as a result of unauthorized disclosure of his PII.

23.    Plaintiff has and is continuing to experience fear, stress, frustration, and anxiety, among other issues, because Defendant disclosed his PII to unauthorized parties who may now use that information for improper and unlawful purposes.

24.    Plaintiff is exposed, and will continue to be exposed for the remainder of his life, to imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse proximately resulting from his PII being obtained by unauthorized third parties and/or cybercriminals.

25.    Plaintiff is also at a continued risk of harm because, on information and belief, his PII remains in Defendant's systems, which have already been shown to be susceptible to compromise and attack, and is subject to further

attack, so long as Defendant fails to undertake the necessary and appropriate data security measures to protect the PII in its possession.

26.    Plaintiff has a continuing interest in ensuring that his PII, which remains within Defendant's possession and control, is protected and safeguarded against future data breaches and cybersecurity risks.

27.    Defendant SAG-AFTRA Health Plan is a labor management trust with its principal place of business in Burbank, California.

## JURISDICTION AND VENUE

28.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because: (i) the amount in controversy exceeds $5 million, exclusive of interest and costs; (ii) the number of Class Members exceeds 100; and (iii) minimal diversity exists because many Class Members have different citizenship from Defendant.

29.    This Court has personal jurisdiction over Defendant because Defendant resides in and conducts substantial business in this District through its principal place of business; engaged in the conduct at issue from and within this District; and otherwise has substantial contacts with this District.

30.    Venue is proper under 28 U.S.C. § 1391(a) and (b) because Defendant's principal place of business is in this District and a substantial part of the events or omissions giving rise to the claims occurred in, were directed to, and/or emanated from this District.

## GENERAL ALLEGATIONS

### Overview of Defendant and Its Collection of PII

31.    As a regular and necessary part of its business, Defendant collects and maintains sensitive PII from its participants.  Defendant is and was aware of the sensitive nature of the PII it collects, and it acknowledges the importance of data privacy in its "Privacy Policy," published on its website.[1]

---

[1]  https://www.sagaftraplans.org/health/privacy

CLASS ACTION COMPLAINT

32.     Defendant's "Privacy Policy" promises that Defendant is "committed to protecting your privacy." The Policy states: "We pledge that we will take reasonable steps to ensure that your Personal Information … will only be used in ways that are in compliance with this Privacy Policy." The Policy also promises to "maintain reasonable safeguards to keep your Personal Information secure."[2]

33.     By obtaining, collecting, using, and benefitting from Plaintiff's and Class Members' PII, Defendant assumed legal and equitable duties that required it to, at a minimum, implement adequate safeguards to prevent unauthorized use or disclosure of PII and to report any unauthorized use or disclosure of PII.

34.     Contrary to Defendant's representations and assurances, it failed to implement adequate data security measures, as evidenced by Defendant's admission of the Data Breach.

**The Data Breach**

35.     In data breach notification filed with the California Attorney General, Defendant disclosed that it detected the breach on September 18, 2024.

36.     Defendant did not begin sending Plaintiff and other Class Members the Notice until December 2, 2024.

37.     The PII accessed by cybercriminals appears not to have been encrypted because if properly encrypted, the attackers would have acquired unintelligible data and would not have accessed the PII.

38.     As an entity that collects and maintains significant volumes of PII, the targeted attack was a foreseeable risk of which Defendant was aware and knew it had a duty to guard against.

**Defendant Failed to Follow FTC Guidelines**

39.     The Federal Trade Commission ("FTC") has regularly promulgated guidelines for businesses, which highlight the necessity of

---

[2] *Id.*

CLASS ACTION COMPLAINT

implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision- making.

40.     Defendant was prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.[3]

41.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[4]

42.     The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

43.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that service providers have implemented reasonable security measures.

---

[3]  *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

[4]  *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION  (October 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting- personal-information.pdf.

CLASS ACTION COMPLAINT

44.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.[5]  Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

45.     Defendant failed to properly implement the basic data security practices recommended by the FTC.

46.     Defendant was at all times fully aware of its obligation to protect its customers' PII. Defendant was also aware of the significant repercussions that would result from its failure to do so.  Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to individuals' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

**Defendant Failed to Comply with Industry Standards for Data Security**

47.     In light of the evident threat of cyberattacks seeking consumers' PII, several best practices have been identified by regulatory agencies and experts that, at a minimum, should be implemented by companies like Defendant to secure Plaintiff's and Class Members' PII.

48.     Defendant is aware of the importance of safeguarding Plaintiff's and Class Members' PII, and that by virtue of its business—as an organization that handles sensitive personal and healthcare information—it placed Plaintiff's and Class Members' PII at risk of being targeted by cybercriminals.

---

[5]  *See*, *e.g. In the Matter of LabMD, Inc., A Corp*, No. 9357, 2016 WL 4128215, at *32 (F.T.C. July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act."), *vacated on other grounds, LabMD, Inc. v. Fed. Trade Comm'n*, 894 F.3d 1221 (11th Cir. 2018).

9

49. Because Defendant failed to implement, maintain, and comply with necessary cybersecurity requirements, it was unable to protect Plaintiff's and Class Members' information and confidentiality, and protect against obvious and readily foreseeable threats to information security and confidentiality.

50. Several best practices have been identified that, at a minimum, should be implemented by entities like Defendant, including, but not limited to: educating all employees; strong passwords; multi-layer security, such as firewalls and anti-virus and anti- malware software; encryption (e.g., making data unreadable without a key); multi-factor authentication; backup data; and limiting the number of employees with access to sensitive data.

51. Defendant failed to meet the minimum standards of, e.g., the NIST Cybersecurity Framework, and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established industry standards in reasonable cybersecurity readiness.

52. These foregoing frameworks are existing and applicable industry standards in the corporate sector and Defendant failed to comply with these accepted standards, thereby opening the door to cybercriminals and causing the Data Breach.

53. Despite Defendant's obligations, Defendant failed to appropriately monitor and maintain its data security systems in a meaningful way so as to prevent the Data Breach.

54. Had Defendant properly maintained its systems and adequately protected them, it could have prevented the Data Breach.

**Defendant Owed a Duty to Safeguard PII, and It Breached That Duty**

55. Defendant was aware of the importance of security in maintaining personal information (particularly sensitive personal information like the PII involved here), and the value consumers place on keeping their PII secure.

10

56.     Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the PII of Plaintiff and Class Members.

57.     Defendant owed a duty to Plaintiff and Class Members, who entrusted Defendant with extremely sensitive PII to design, maintain, and test the information technology systems that housed Plaintiff's and Class Members' PII, to ensure that the PII in Defendant's possession were adequately secured and protected.

58.     Defendant owed a duty to Plaintiff and Class Members to adequately train its employees and others with access to Plaintiff's and Class Members' PII on the procedures and practices necessary to safeguard such sensitive information. This duty also required supervision, training, and compliance on Defendant's part to ensure that it complied with creating, implementing, and maintaining reasonable data security practices and procedures sufficient to protect Plaintiff's and Class Members' PII.

59.     Defendant owed a duty to Plaintiff and Class Members to implement processes that would enable Defendant to timely detect a breach of its information technology systems, and a duty to act upon any data security warnings or red flags detected by such systems in a timely fashion.

60.     Defendant owed a duty to Plaintiff and Class Members to disclose when and if its information technology systems and data security practices were not adequate to protect and safeguard Plaintiff's and Class Members' PII.

CLASS ACTION COMPLAINT

61.     Defendant owed a duty of care to Plaintiff and Class Members because they were foreseeable and probable victims of inadequate data security practices.

62.     Defendant violated these duties. Defendant became aware of the Data Breach on or about September 18, 2024; however, Plaintiff, Class Members, and the public did not learn of the Data Breach until approximately ten weeks later.  This demonstrates that Defendant did not properly implement measures designed to timely detect a data breach of their information technology systems, as required to adequately safeguard Plaintiff's and Class Members' PII.

63.     Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

●     Failing to maintain an adequate data security system to reduce the risk of data breaches and cyberattacks;

●     Failing to adequately protect customers' PII;

●     Failing to properly monitor its own data security systems for existing intrusions;

●     Failing to detect unauthorized ingress into its systems;

●     Failing to train its employees in the proper handling of emails containing PII and maintain adequate email security practices;

●     Failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act;

●     Failing to adhere to industry standards for cybersecurity as discussed above; and

●     Otherwise breaching its duties and obligations to protect Plaintiff's and Class Members' private PII.

12

64. Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' PII by allowing cybercriminals to access that PII, which was unsecured and unencrypted.

65. Had Defendant remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiff's and Class Members' confidential PII.

66. However, due to Defendant's failures, Plaintiff and Class Members now face an increased risk of fraud and identity theft. In addition, Plaintiff and Class Members also lost the benefit of the bargain they made with Defendant.

**The Data Breach Was a Foreseeable Risk**

67. The Data Breach was foreseeable and avoidable.

68. Various governmental bodies have put entities like Defendant on notice of the likelihood of cyberattacks. In a Joint Cybersecurity Advisor, the Federal Bureau of Investigation ("FBI") and the Cybersecurity & Infrastructure Security Agency ("CISA") encouraged critical infrastructure organizations, such as Defendant, to implement their various recommendations as set in the advisory to reduce the likelihood and impact of data breaches.[6]

69. Indeed, cyberattacks have been common for over ten years, with the FBI warning as early as 2011 that cybercriminals were "advancing their abilities to attack a system remotely" and "[o]nce a system is compromised, cyber criminals will use their accesses to obtain PII." The FBI further warned that "the increasing sophistication of cyber criminals will no doubt lead to an escalation in cybercrime."[7]

---

[6] *See, e.g*, *#StopRansomware: ALPHV Blackcat*, AMERICA'S CYBER DEFENSE AGENCY (Feb. 27, 2024), https://www.cisa.gov/news-events/cybersecurity-advisories/aa23-353a; *#StopRansomware: ALPHV Blackcat*, AMERICA'S CYBER DEFENSE AGENCY (May 10, 2024), https://www.cisa.gov/news-events/cybersecurity-advisories/aa24-131a.

[7] Gordon M. Snow, *Statement before the House Financial Services Committee,*

13

70.    Cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[8]

71.    The Office for Civil Rights ("OCR") also urges the use of encryption of data containing sensitive personal information. As long ago as 2014, the Department fined two companies approximately two million dollars for failing to encrypt laptops containing sensitive personal information. In announcing the fines, Susan McAndrew, OCR's deputy director of health information privacy, stated "[o]ur message to these organizations is simple: encryption is your best defense against these incidents."[9]

72.    Moreover, in light of recent high profile data breaches at other industry leading companies, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or should have known that the PII that they collected and maintained would be targeted by cybercriminals.

_Subcommittee on Financial Institutions and Consumer Credit_, FBI (Sept. 14, 2011), https://archives.fbi.gov/archives/news/testimony/cyber-security-threats-to-the-financial-sector.

[8]  Ben Kochman, _FBI, Secret Service Warn of Targeted Ransomware_, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

[9]  Stolen Laptops Lead to Important HIPAA Settlements, U.S. Department of Health and Human Services (Apr. 22, 2014), https://wayback.archiveit.org/3926/20170127085330/https://www.hhs.gov/about/news/2014/04/22/stolen-laptops-lead-to-important-hipaa-settlements.html.

CLASS ACTION COMPLAINT

73.    Data breaches are preventable. As Lucy Thompson wrote in the *Data Breach and Encryption Handbook*, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions." She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised…"[10]  and "[m]ost of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures … [a]ppropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a data breach never occurs."

74.    Given the wealth of information from law enforcement concerning the increasing prevalence of cyberattacks, Defendant knew and should have known about its data security vulnerabilities and implemented enhanced and adequate protection to protect and secure Plaintiff's and Class Members' Private Information. Even knowing the risk, Defendant failed to do so.

75.    Defendant was well aware that the protected PII it acquires, stores, and utilizes is highly sensitive and of significant value to both the owners of the PII and those who would use it for wrongful purposes.

76.    Defendant knew, or should have known, the importance of safeguarding the PII entrusted to it and of the foreseeable consequences if its systems were breached. Defendant failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

---

[10]  Lucy L. Thompson, *Data Breach and Encryption Handbook* (Lucy Thompson, ed., 2011) https://archive.org/details/isbn_9781604429893/page/28/mode/2up.

77.     Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

78.     At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiff and Class Members and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

79.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's servers, amounting to potentially thousands of individuals' detailed PII, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

80.     As a highly sophisticated party that handles sensitive PII, Defendant failed to establish and/or implement appropriate administrative, technical and/or physical safeguards to ensure the security and confidentiality of Plaintiff's and other Class Members' PII to protect against anticipated threats of intrusion of such information.

81.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in industries holding significant amounts of PII preceding the date of the breach.

**PII Is Inherently Valuable**

82.     PII is a valuable property right.[11]  The value of PII as a commodity is measurable.[12]  "Firms are now able to attain significant market valuations by

---

[11]  *See* Marc van Lieshout, *The Value of Personal Data*, 457 International Federation for Information Processing 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible..."), https://www.researchgate.net/publication/283668023.

[12]  Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black*

employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[13]  American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018.[14]  Personal data is so valuable to identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

83.    PII can sell for as much as $363 per record according to the Infosec Institute.[15]  PII is particularly valuable because criminals can use it to target victims with frauds and scams. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years.

84.    PII is a valuable commodity to identity thieves, particularly when it is aggregated in large numbers. Former United States Attorney General William P. Barr made clear that consumers' sensitive personal information commonly stolen in data breaches "has economic value." The purpose of stealing large caches of personal data is to use it to defraud individuals or to place it for illegal sale and to profit from other criminals who buy the data and use it to commit fraud and identity theft. Indeed, cybercriminals routinely post stolen personal information on anonymous websites, making the information widely available to the criminal underworld.

---

*Market*, MEDSCAPE.COM (Apr. 28, 2014), http://www.medscape.com/viewarticle/824192.

[13] *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD Digital Economy Papers, No. 220 at 4, OECD Publishing (Apr. 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal- data_5k486qtxldmq-en.

[14] *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, Interactive Advertising Bureau (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/.

[15] Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, InfoSec (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/.

CLASS ACTION COMPLAINT

85.     There is an active and robust market for this information. As John Sancenito, president of Information Network Associates, a company which helps companies with recovery after data breaches, explained after a data breach "[m]ost of the time what [data breach hackers] do is they steal the data and then they sell the data on the dark web to the people who actually commit the fraud."

86.     As a result of its real value and the recent large-scale data breaches, identity thieves and cybercriminals have openly posted credit card numbers, driver's license numbers, other ID numbers, Social Security numbers, PII, and other sensitive information directly on various websites, making the information publicly available. This information from various breaches, including the information exposed in the Data Breach, can be aggregated and become more valuable to thieves and more damaging to victims.

87.     Consumers place a high value on the privacy of that data. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[16]

**Plaintiff and Class Members Suffered Harm as a Result of the Data Breach**

88.     Identity theft is the most common consequence of a data breach—it occurs to 65% of data breach victims.[17]  Consumers lost more than $56 billion to identity theft and fraud in 2020, and over 75% of identity theft victims

---

[16]  Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2)  INFORMATION SYSTEMS RESEARCH 254 (June 2011), https://www.jstor.org/stable/23015560?seq=1.

[17]  Eugene Bekker, *What Are Your Odds of Getting Your Identity Stolen?*, IDENTITYFORCE BLOG (Apr. 14, 2021), https://www.identityforce.com/blog/identity-theft-odds-identity-theft-statistics.

18

reported emotional distress.[18]

89.     Theft of PII is serious. The FTC warns consumers that identity thieves use PII to exhaust financial accounts, receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[19]

90.     Identity thieves use PII for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

91.     With access to an individual's PII, criminals can do more than just empty a victim's bank account—they can also commit all manners of fraud, including: obtaining a driver's license or official identification card in the victim's name but with the thief's picture, obtaining government benefits, or filing a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's information, rent a house, or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[20]

92.     The United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft face "substantial costs and time to repair the damage to their good name and credit record."[21]

93.     That is because any victim of a data breach is exposed to serious ramifications regardless of the nature of the data. Indeed, the reason criminals

---

[18] *Id.*

[19] Federal Trade Commission, *What to Know About Identity Theft*, FEDERAL TRADE COMMISSION CONSUMER ADVICE, https://www.consumer.ftc.gov/articles/what-know-about-identity-theft

[20] *Warning Signs of Identity Theft*, FEDERAL TRADE COMMISSION, https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last accessed Sept. 5, 2024).

[21] U.S. GOV'T ACCOUNTABILITY OFF., GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (June 2007), https://www.gao.gov/new.items/d07737.pdf.

CLASS ACTION COMPLAINT

steal PII is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims and take over victims' identities to engage in illegal financial transactions under the victims' names. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique known as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

94.     PII is such a valuable commodity to identity thieves that once it has been compromised, criminals will use the information and trade it on dark web black-markets for years to come.

95.     For example, it is believed that certain highly sensitive personal information compromised in the 2017 Experian data breach was being used, three years later, by identity thieves to apply for COVID-19-related unemployment benefits.

96.     The PII exposed in the Data Breach is valuable to identity thieves for use in the kinds of criminal activity described herein. These risks are both certainly impending and substantial.

97.     There may also be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. Fraud and identity theft resulting from the Data Breach may go undetected for weeks or months.

CLASS ACTION COMPLAINT

98.     According to the GAO, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[22]

99.     A study by the Identity Theft Resource Center shows the multitude of harms caused by fraudulent use of personal and financial information:



100.    It is within this context that Plaintiff and all other Class Members must now live with the knowledge that their PII is forever in cyberspace and was taken by people willing to use the information for any number of scams, including making the information available for sale on the black market.

---

[22] *Id.*

21

101.   Victims of the Data Breach, like Plaintiff and Class Members, must spend many hours and large amounts of money protecting themselves from the current and future negative impacts to their privacy and credit because of the Data Breach.[23]  The Department of Justice's Bureau of Justice Statistics found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems."

102.   As a result of Defendant's conduct and failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect consumers' PII, which allowed the Data Breach to occur, Plaintiff's and Class Members' PII has been and is now in the hands of unauthorized individuals and third parties, which may include thieves, unknown criminals, and other potentially hostile individuals.

103.   Plaintiff and Class Members greatly value their privacy, especially their PII. They would not have entrusted Defendant with their PII had they known that it would fail to adequately protect it. Indeed, Plaintiff and Class Members provided Defendant with this highly sensitive information with the expectation that Defendant would keep their PII secure and inaccessible from unauthorized parties.

104.   As a result of Defendant's failure to implement and follow even the most basic security procedures, Plaintiff and Class Members have suffered or will suffer actual harms for which they are entitled to compensation, including, but not limited to the following:

- Trespass, damage to, and theft of personal property, including PII;
- Improper disclosure of their PII;
- The imminent and impending injury flowing from actual and potential future fraud and identify theft posed by their PII being in

---

[23] *Guide for Assisting Identity Theft Victims*, FEDERAL TRADE COMMISSION (Sept. 2013), http://www.global-screeningsolutions.com/Guide-for-Assisting-ID-Theft-Victims.pdf.

CLASS ACTION COMPLAINT

the hands of criminals and having already been misused;

- The imminent and certainly impending risk of having their confidential PII used against them by spam callers to defraud them;

- Damages flowing from Defendant's untimely and inadequate notification of the Data Breach;

- Loss of privacy suffered as a result of the Data Breach;

- Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the Data Breach;

- The loss of use of and access to their credit, accounts, and/or funds;

- Trespass, damage to, and theft of their personal property, including PII;

- Increased cost of borrowing, insurance, deposits, and other items which are adversely affected by a reduced credit score; and

- Damage to their credit due to fraudulent use of their PII.

105.  Once PII is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or contained against future misuse. For this reason, Plaintiff and Class Members will need to maintain these heightened measures for years, and possibly their entire lives.

106.  Plaintiff and Class Members are also at a continued risk of harm because their PII remains in Defendant's systems, which have already been shown to be susceptible to compromise and attack and is subject to further attack so long as Defendant fails to undertake the necessary and appropriate data security measures to protect the PII in its possession.

107.  Plaintiff and Class Members further face substantial risk of being targeted for phishing, data intrusion, and other illegal schemes based on Plaintiff's and Class Members' PII, as fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

108.   Plaintiff and Class Members further have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

- Reviewing and monitoring financial and other sensitive accounts and finding fraudulent insurance claims, loans, and/or government benefits claims;
- Purchasing credit monitoring and identity theft prevention;
- Placing "freezes" and "alerts" with reporting agencies;
- Spending time on the phone with or at financial institutions and/or government agencies to dispute unauthorized and fraudulent activity in their names;
- Contacting financial institutions and closing or modifying financial accounts; and
- Closely reviewing and monitoring insurance accounts, bank accounts, and credit reports for unauthorized activity for years to come.

109.   As a result of the Data Breach, and in addition to the time Plaintiff and Class Members have spent and anticipate spending to mitigate the impact of the Data Breach on their lives, Plaintiff and Class Members have also suffered emotional distress from the public release of their PII, which they believed would be protected from unauthorized access and disclosure. The emotional distress they have experienced includes anxiety and stress resulting from the fear that unauthorized bad actors are viewing, selling, and or using their PII for the purposes of identity theft and fraud.

110.   Additionally, Plaintiff and Class Members have suffered damage to and diminution in the value of their highly sensitive and confidential PII, a

24

form of property that Plaintiff and Class Members entrusted to Defendant, and which was compromised as a result of the Data Breach Defendant failed to prevent. Plaintiff and Class Members have also suffered a violation of their privacy rights as a result of Defendant's unauthorized disclosure of their PII.

111.   Plaintiff and Class Members were also damaged because they overpaid for a service that was intended to be accompanied by adequate data security that complied with industry standards but was not. Part of the price Plaintiff and Class Members paid to Defendant was intended to be used by Defendant to fund adequate security of their computer system(s) and Plaintiff's and Class Members' Private Information. Thus, Plaintiff and Class Members did not get what they paid for and agreed to.

112.   To date, Defendant has done virtually nothing to provide Plaintiff and Class Members with relief for the damages they have suffered as a result of the Data Breach. Defendant offered one year of credit monitoring, but that is insufficient to rectify the lifetime risk of identity theft Plaintiff and Class Members potentially face.  Not only did Defendant fail to provide adequate ongoing credit monitoring or identity protection services for individuals impacted by the Data Breach, but the credit monitoring identity theft protection services does nothing to compensate Plaintiff and Class Members for damages incurred, and time spent dealing with, the Data Breach.

113.   Many failures laid the groundwork for the Data Breach, starting with Defendant's failure to incur the costs necessary to implement adequate and reasonable cybersecurity training, procedures, and protocols that were necessary to protect Plaintiff's and Class Members' PII.

114.   Defendant maintained the PII in an objectively reckless manner, making the PII vulnerable to unauthorized disclosure.

115.   Defendant knew, or reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences that would

CLASS ACTION COMPLAINT

result if Plaintiff's and Class Members' PII were stolen, including the significant costs that would be placed on Plaintiff and Class Members as a result of the breach.

116. The risk of improper disclosure of Plaintiff's and Class Members' PII was a known risk to Defendant, and Defendant was on notice that failing to take necessary steps to secure Plaintiff's and Class Members' PII from that risk left the PII in a dangerous condition.

117. Defendant disregarded the rights of Plaintiff and Class Members by, inter alia, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that their PII was protected against unauthorized intrusions; (ii) failing to disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and Class Members' PII; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (v) failing to provide Plaintiff and Class Members with prompt and accurate notice of the Data Breach.

## **CLASS ALLEGATIONS**

118. Plaintiff brings this case individually and, pursuant to Rule 23(b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure, on behalf of the following Nationwide Class and State Classes (collectively the "Class"):

Nationwide Class

All residents of the United States whose PII was compromised in the Defendant Data Breach, including all persons who received notice of the Data Breach.

California Class

All residents of California whose PII was compromised in the Defendant Data Breach, including all persons who received notice of the Data Breach.

119.   Excluded from the Class is Defendant, its subsidiaries and affiliates, its officers, directors and members of their immediate families and any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

120.   Plaintiff reserves the right to modify or amend the definition of the proposed Class, if necessary, before this Court determines whether certification is appropriate.

121.   The requirements of Rule 23(a)(1) are satisfied. The Class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective Class Members through this class action will benefit both the parties and this Court. There are well over one thousand Class members.

122.   The exact size of the Class and the identities of the individual members thereof are ascertainable through Defendant's records, including, but not limited to, the information implicated in the Data Breach.

123.   The requirements of Rule 23(a)(2) are satisfied. There is a well-defined community of interest and there are common questions of fact and law affecting Class Members. The questions of fact and law common to the Class predominate over questions which may affect individual members and include the following:

a.     Whether Defendant was negligent in collecting and disclosing Plaintiff's and Class Members' PII;

b.     Whether and to what extent Defendant had a duty to secure and protect the PII of Plaintiff and Class Members;

c.     Whether Defendant had duties not to disclose the PII of Plaintiff and Class Members to unauthorized third parties;

27

d.      Whether Defendant took reasonable steps and measures to safeguard Plaintiff's and Class Members' PII;

e.      Whether Defendant failed to adequately safeguard the PII of Plaintiff and Class Members;

f.      Whether Defendant breached its duties to exercise reasonable care in handling Plaintiff's and Class Members' PII in the manner alleged herein, including failing to comply with industry standards;

g.      Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h.      Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

i.      Whether Plaintiff and Class Members are entitled to damages as a result of Defendant's wrongful conducts; and

j.      Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

124.   The requirements of Rule 23(a)(3) are satisfied. Plaintiff's claims are typical of the claims of Class Members. The claims of the Plaintiff and Class Members are based on the same legal theories and arise from the same failure by Defendant to safeguard PII. Plaintiff and Class Members each had their PII disclosed by Defendant to an unauthorized third party.

125.   The requirements of Rule 23(a)(4) are satisfied. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class Members. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of Class Members and has no interests antagonistic to the Class Members. In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action

CLASS ACTION COMPLAINT

litigation, including data breach litigation. The claims of Plaintiff and Class Members are substantially identical as explained above. While the aggregate damages that may be awarded to the Class Members are likely to be substantial, the damages suffered by the individual Class Members are relatively small. As a result, the expense and burden of individual litigation make it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Certifying the case as a class will centralize these substantially identical claims in a single proceeding, which is the most manageable litigation method available to Plaintiff and the Class and will conserve the resources of the parties and the court system, while protecting the rights of each member of the Class. Defendant's uniform conduct is generally applicable to the Class as a whole, making relief appropriate with respect to each Class Member.

126. Here a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudications of the asserted claims. There will be no difficulty in managing this action as a class action, and the disposition of the claims of the Class Members in a single action will provide substantial benefits to all parties and to the Court. Damages for any individual Class Member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Defendant's violations of law inflicting damages in the aggregate would go unremedied.

127. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

CLASS ACTION COMPLAINT

a.      Whether Defendant owed a legal duty to Plaintiff and the Classes to exercise due care in collecting, storing, using, and safeguarding their PII;

b.      Whether Defendant's data security practices were reasonable in light of best practices recommended by data security experts;

c.      Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

d.      Whether Defendant failed to take commercially reasonable steps to safeguard consumer PII; and

e.      Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

128.   Finally, all members of the proposed Classes are readily ascertainable. Defendant has access to the names and addresses of Class Members affected by the Data Breach. At least some Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

**COUNT I**
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Nationwide Class)**

129.   Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

130.   Defendant owed a duty to Plaintiff and all other Class Members to exercise reasonable care in safeguarding and protecting their PII in its possession, custody, or control.

131.   Defendant knew, or should have known, the risks of collecting and storing Plaintiff's and all other Class Members' PII and the importance of maintaining secure systems. Defendant knew, or should have known, of the vast uptick in data breaches in recent years. Defendant had a duty to protect the PII of Plaintiff and Class Members.

132.    Given the nature of Defendant's business, the sensitivity and value of the PII it maintains, and the resources at its disposal, Defendant should have identified the vulnerabilities to its systems and prevented the Data Breach from occurring, which Defendant had a duty to prevent.

133.    Defendant breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect the PII entrusted to them—including Plaintiff's and Class Members' PII.

134.    It was reasonably foreseeable to Defendant that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class Members' PII to unauthorized individuals.

135.    But for Defendant's negligent conduct/breach of the above-described duties owed to Plaintiff and Class Members, their PII would not have been compromised.

136.    As a result of Defendant's above-described wrongful actions, inaction, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff and all other Class Members have suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of, inter alia: (i) a substantially increased risk of identity theft and medical theft— risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation and diminution in

the value of their PII, for which there is a well-established national and international market; (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of medical identity theft they face and will continue to face; and (vii) actual or attempted fraud.

**COUNT II**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Nationwide Class)**

137.   Plaintiff realleges and incorporate by reference all preceding paragraphs as if fully set forth herein.

138.   Plaintiff and Class Members conferred a monetary benefit upon Defendant in the form of monies paid for health insurance coverage.

139.   Defendant accepted or had knowledge of the benefits conferred upon it by Plaintiff and Class Members. Defendant also benefited from the receipt of Plaintiff's and Class Members' PII.

140.   As a result of Defendant's conduct, Plaintiff and Class Members suffered actual damages in an amount equal to the difference in value between their payments made with reasonable data privacy and security practices and procedures that Plaintiff and Class Members paid for, and those payments without reasonable data privacy and security practices and procedures that they received.

141.   Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members because Defendant failed to adequately implement the data privacy and security procedures for themselves that Plaintiff and Class Members paid for and that were otherwise mandated by federal, state, local laws, and industry standards.

142.   Defendant should be compelled to provide for the benefit of Plaintiff and Class Members all unlawful proceeds received by it as a result of the conduct and Data Breach alleged herein.

32

## COUNT III
## BREACH OF IMPLIED CONTRACT
**(On Behalf of Plaintiff and the Nationwide Class)**

143.   Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

144.   Defendant required Plaintiff and Class Members to provide, or authorize the transfer of, their PII in order for Defendant to provide services. In exchange, Defendant entered into implied contracts with Plaintiff and Class Members in which Defendant agreed to comply with their statutory and common law duties to protect Plaintiff's and Class Members' PII and to timely notify them in the event of a data breach.

145.   Plaintiff and Class Members would not have provided their PII to Defendant had they known that Defendant would not safeguard their PII, as promised, or provide timely notice of a data breach.

146.   Plaintiff and Class Members fully performed their obligations under their implied contracts with Defendant.

147.   Defendant breached the implied contracts by failing to safeguard Plaintiff's and Class Members' PII and by failing to provide them with timely and accurate notice of the Data Breach.

148.   The losses and damages Plaintiff and Class Members sustained (as described above) were the direct and proximate result of Defendant's breach of their implied contracts with Plaintiff and Class Members.

## COUNT IV
## CAL. CONFIDENTIALITY OF MEDICAL INFORMATION ACT
**(On Behalf of Plaintiff and the California Class)**

149.   Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

33

150.   Defendant is subject to the Confidentiality of Medical Information Act because it is a health care service plan under Civil Code § 56.10.

151.   In the course of providing health care, Defendant created, maintained, preserved, stored, abandoned, destroyed, and disposed of personal medical information, including PII, but negligently failed to preserve the confidentiality of the information contained therein.

152.   Defendant negligently failed to take reasonable precautions to ensure its computer systems were protected from access by unauthorized persons, which resulted in the release of personal medical information, including PII.

153.   Plaintiff and the Class Members sustained economic loss as a result of the authorized disclosure of their personal medical information, including PII.

154.   As a result of Defendant's violations, Plaintiff and Class Members are entitled to actual damages, statutory damages, punitive damages, and attorneys' fees and costs in amounts to be proved at trial.

<u>**COUNT V**</u>
**CAL. CONSUMER PRIVACY ACT**
**(On Behalf of Plaintiff and the California Class)**

155.   Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set Defendant herein.

156.   Plaintiff incorporates the allegations set forth above.

157.   Defendant violated California Civil Code § 1798.150 of the CCPA by failing to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the nonencrypted PII of Plaintiff and the Class.  As a direct and proximate result, Plaintiff and Class Members' unencrypted and unredacted PII was subject to unauthorized access and theft.

158.   Defendant is a "business" under the meaning of California Civil Code § 1798.140 because Defendant is a "corporation, association, or other legal

34

entity that is organized or operated for the profit or financial benefit of its
shareholders or other owners" that "collects consumers' personal information"
and is active "in the State of California" and "had annual gross revenues in
excess of twenty-five million dollars ($25,000,000) in the preceding calendar
year." Civil Code § 1798.140(d).

159.    Plaintiff seeks injunctive or other equitable relief to ensure
Defendant hereinafter adequately safeguards Private Information by
implementing reasonable security procedures and practices. Such relief is
particularly important because Defendant continues to hold PII belonging to
Plaintiff and the Class.  Plaintiff has an ongoing interest in ensuring that his and
Class Members' PII is reasonably protected, and Defendant has demonstrated a
pattern of failing to adequately safeguard this information.

160.    Pursuant to California Civil Code § 1798.150(b), Plaintiff mailed a
CCPA notice letter to Defendant's registered service agents, detailing the specific
provisions of the CCPA that Defendant has violated and continues to violate. If
Defendant cannot cure within 30 days—and Plaintiff believes such cure is not
possible under these facts and circumstances—then Plaintiff intends to promptly
amend this Complaint to seek statutory damages as permitted by the CCPA.  In
the meantime, Plaintiff seeks actual pecuniary damages resulting from the
violation.

<u>**COUNT VI**</u>
**CAL. UNFAIR COMPETITION LAW**
**(On Behalf of Plaintiff and the California Class)**

161.    Plaintiff realleges and incorporate by reference all preceding
paragraphs as if fully set Defendant herein.

162.    The California Unfair Competition Law, Cal. Bus. & Prof. Code
§17200, et seq. ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair"

35

business act or practice and any false or misleading advertising, as defined by the UCL and relevant case law.

163.   By reason of Defendant's above-described wrongful actions, inaction, and omission, the resulting Data Breach, and the unauthorized disclosure of Plaintiff's and Class Members' PII, Defendant engaged in unlawful, unfair, and fraudulent practices within the meaning of the UCL.

164.   Defendant's business practices as alleged herein are unfair because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers, in that the private and confidential PII of consumers has been compromised for all to see, use, or otherwise exploit.

165.   Defendant's practices were unlawful and in violation of the CCPA and CMIA and Defendant's own privacy policy because Defendant failed to take reasonable measures to protect Plaintiff's and Class Members' PII.

166.   Defendant's business practices as alleged herein are fraudulent because they are likely to deceive consumers into believing that the PII they provide to Defendant will remain private and secure, when in fact it was not private and secure.

167.   Plaintiff and Class Members suffered (and continue to suffer) injury in fact and lost money or property as a direct and proximate result of Defendant's above-described wrongful actions, inaction, and omissions including, inter alia, the unauthorized release and disclosure of their PII.

168.   Defendant's above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff's and Class Members' PII also constitute "unfair" business acts and practices within the meaning of Cal. Bus. & Prof. Code § 17200 et seq., in that Defendant's conduct was substantially injurious to Plaintiff and Class Members, offensive to public policy, immoral, unethical,

36

oppressive, and unscrupulous, and the gravity of Defendant's conduct outweighs any alleged benefits attributable to such conduct.

169.   But for Defendant's misrepresentations and omissions, Plaintiff and Class Members would not have provided their PII to Defendant, or would have insisted that their PII be more securely protected.

170.   As a direct and proximate result of Defendant's above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff and Class Members' PII, they have been injured as follows: (1) the loss of the opportunity to control how their PII is used; (2) the diminution in the value and/or use of their PII entrusted to Defendant; (3) the increased, imminent risk of fraud and identity theft; (4) the compromise, publication, and/or theft of their PII; and (5) the costs associated with monitoring their PII, amongst other things.

171.   Plaintiff takes upon himself enforcement of the laws violated by Defendant in connection with the reckless and negligent disclosure of PII. There is a financial burden incurred in pursuing this action and it would be against the interests of justice to penalize Plaintiff by forcing him to pay attorneys' fees and costs from the recovery in this action. Therefore, an award of attorneys' fees and costs is appropriate under California Code of Civil Procedure § 1021.5.

## **PRAYER FOR RELIEF**

Plaintiff, individually, and on behalf of all other members of the Class, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

1.      Certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing Plaintiff's counsel as Class Counsel;

2.      Awarding Plaintiff and the Class monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement;

3.      Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, individually, and on behalf of the Class, seek appropriate injunctive relief designed to prevent Defendant from experiencing another data breach by adopting and implementing best data security practices to safeguard PII and to provide or extend credit monitoring services and similar services to protect against all types of identity theft.

4.      Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

5.      Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

6.      Awarding Plaintiff and the Class such other favorable relief as the Court deems proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated:  December 10, 2024

CLAPP & LAUINGER LLP

*/s/ James F. Clapp*
JAMES F. CLAPP
Attorneys for Plaintiff and the
Proposed Class

38

CLASS ACTION COMPLAINT